# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

ANTHONY T. GROSE,

               **Plaintiff,**

v.                                     Case 2:20-cv-02307-TLP-cgc

CITY OF BARTLETT, TENNESSEE
GOVERNMENT; NICK BRAMLETT,
in his official and individual capacity;
and, WESLEY WILSON, in his
official and individual capacity,

               **Defendants.**

## REPORT AND RECOMMENDATION ON BARTLETT DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Before the Court are Defendants City of Bartlett, Tennessee (the "City"), Nick Bramlett ("Officer Bramlett"), and Wesley Wilson's ("Officer Wilson") (collectively the "Bartlett Defendants") Motion for Summary Judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Entries ("D.E.") #130, #131). Pursuant to Administrative Order 2013-05[1], the instant motion has been referred to the United States Magistrate Judge for Report and Recommendation. For the reasons set forth herein, it is recommended that Defendants' Motion for Summary Judgment be GRANTED.

---

[1] The instant case has been referred to the United States Magistrate Judge by Administrative Order pursuant to the Federal Magistrates Act, 28 U.S.C. §§ 631-639. All pretrial matters within the Magistrate Judge's jurisdiction are referred pursuant to 28 U.S.C. § 636(b)(1)(A) for determination, and all other pretrial matters are referred pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) for report and recommendation.

I.      Introduction

This case arises from a traffic stop effectuated by Officer Bramlett, a subsequent field-sobriety test and arrest performed by Officer Wilson, a seizure of the property inside Plaintiff's vehicle, and a blood draw, all of which Plaintiff alleges to have been unlawfully performed. (Compl., filed at D.E. #1, ¶¶ 23-62). On April 20, 2020, Plaintiff filed his Complaint in this Court alleging violations of the following: 42 United States Code Section 1983 ("Section 1983"); 18 United States Code Sections 241, 242, and 244; 34 U.S.C. Section 12601; and, Title VI of the Civil Rights Act of 1964 ("Title VI") (Compl. ¶¶ 1-4, 82-91).[2] Plaintiff alleges that his Section 1983 claims are based upon violations of the Fourth, Eleventh, and Fourteenth Amendments to the United States Constitution (*Id.*) Finally, Plaintiff alleges a violation of Article I, Section 7 of the Tennessee Constitution. (*Id.*)

On February 21, 2023, the Bartlett Defendants filed their Motion for Summary Judgment[3], which argues as follows:

> 1. Plaintiff's Section 1983 claim against the City fails as a matter of law because Plaintiff has failed to allege or prove that his injuries were caused by an unconstitutional custom or policy of the City.
>
> 2. Plaintiff's Fourteenth Amendment and local ordinance claim fails since Section 1983 is limited to deprivations of federal statutory and constitutional rights and does not cover official conduct that allegedly violates state or local law.
>
> 3. Plaintiff's Eleventh Amendment claims [fail] because it protects states from being sued in federal court; it does not protect individual plaintiffs.

---

[2] On June 10, 2020, Plaintiff filed "Plaintiff's Notice Amending his Complaint at Item No. 55." (D.E #13). In this document, he sought to correct an error his initial Complaint.

[3] This Motion for Summary Judgment addresses the claims against the City as well as Officer Bramlett and Officer Wilson in their official capacities.

2

4. Plaintiff's warrantless blood draw claim fails as it is undisputed that a search warrant was issued by the Bartlett City Judge authorizing the blood draw.

5. Plaintiff's other statutory claims, pursuant to 18 U.S.C. §§ 241, 242, and 244, 18 U.S.C. Chapter 13, and 34 U.S.C. § 12601, fail as a matter of law because they are either entirely not applicable to Plaintiff or are based on criminal statutes that confer no private cause of action; thus, this Court lacks subject matter jurisdiction over such claims.

6. Plaintiff's claims pursuant to 42 U.S.C. § 2000d fail as a matter of law as Plaintiff's Complaint does not contain any fact-based allegations that Title VI is applicable, and his admission that there is no evidence that the City treats African American motorists differently than Caucasian motorists is fatal to his claim.

7. To the extent that Plaintiff intends to assert a claim against the Bartlett Police Department, said claim fails as a matter of law because the Bartlett Police Department is not a separate legal entity subject to suit.

8. Plaintiff's official capacity claims against Defendants Bramlett and Wilson and, to the extent that he seeks to state an official capacity claim against former Mayor Keith McDonald, such claims fail as a matter of law as such claims merely claims against the City and are redundant.

9. As the City is immune from the imposition of punitive damages, Plaintiff's claim against the City and the Official Capacity Defendants for punitive damages should be dismissed.

10. Plaintiff's claims under the Tennessee Constitution fail as a matter of law as Tennessee does not recognize a private cause of action for violations of the Tennessee Constitution.

(Bartlett Defs. Mot. for Summ. J. at PageID 1217-1219). In support of their motion, the Bartlett Defendants filed excerpts from Plaintiff's deposition, declarations from Officer Bramlett, Officer Wilson, Jeffrey J. Cox ("Officer Cox"), and Julian M. Conyers ("Special Agent Conyers"), and Plaintiff's state court indictment. (*Id*. at D.E. #128, #129, #130-1, #130-2, #130-3, #130-4, #130-5). The Bartlett Defendants also filed their Joint Statement of Undisputed Material Facts. (D.E. #130-6).

3

On the same date, Officer Bramlett and Officer Wilson filed their Motion for Summary Judgment, which argues that Plaintiff's claims against them in their individual capacities fail as a matter of law for the following reasons:

1. They are entitled to qualified immunity on Plaintiff's Section 1983 claims based upon false arrest and false imprisonment because their determination that probable cause existed to arrest Plaintiff was objectively reasonable based upon the facts and circumstances within their knowledge, and the subsequent indictment of Plaintiff by the grand jury establishes probable cause as a matter of law on the indicted charges.

2. Plaintiff's Fourteenth Amendment and local ordinance claims fail because Section 1983 is limited to deprivations of federal statutory and constitutional rights and does not cover official conduct that allegedly violates state or local law.

3. Plaintiff's Eleventh Amendment claims fail because this amendment protects states from being sued in federal court but does not extend any protections to individual plaintiffs.

4. Plaintiff's warrantless blood draw claim fails as it is undisputed that a search warrant was issued by the Bartlett City Judge authorizing the blood draw.

5. Plaintiff's other statutory claims fail as a matter of law as they are either clearly not applicable to Plaintiff or are based upon criminal statutes that confer no private right of action.

(Officer Bramlett & Officer Wilson's Mot. for Summ. J. at PageID 1410-1411). In support of their motion, Officer Bramlett and Officer Wilson rely upon the exhibits filed with the Bartlett Defendant's Motion for Summary Judgment. (*Id*.) Officer Bramlett and Officer Wilson also rely upon the Joint Statement of Undisputed Material Facts filed with the Bartlett Defendant's Motion for Summary Judgment. (*See* D.E. # 131-1 at PageID 1415 & D.E. #130-6).

On April 11, 2023, Plaintiff filed his Response to both of Defendants' Motions for Summary Judgment as well as his exhibits thereto. (D.E. #144, #145, #146, #147, #148, #149,

4

#150).[4]  Therein, Plaintiff argues that his claims do not fail as a matter of law.  However, Plaintiff has failed to properly respond to the Joint Statement of Undisputed Material Facts as required by Rule 56(c) of the Federal Rules of Civil Procedure and Local Rule 56.1(b).  Local Rule 56.1(d) provides that "[f]ailure to respond to a moving party's statement of material facts . . . shall indicate that the asserted facts are not disputed for purposes of summary judgment."  Thus, it is RECOMMENDED that the Joint Statement of Material Facts be deemed as undisputed for purposes of this motion.

On May 12, 2023, Defendants filed their Replies in Support of Motion for Summary Judgment.  (D.E. #154, #155). Therein, Defendants argue that Plaintiff failed to comply with Rule 56(c) of the Federal Rules of Civil Procedure and Local Rule 56.1(b), which the Court has address, *supra*.  Defendants assert that "Plaintiff's Title VI claim has been expressly abandoned," that his Section 1983 claim fails as a matter of law, and that his remaining claims have been waived. (*Id.* at PageID 2187-2190).

## II. Proposed Findings of Fact

### a. Bartlett Police, Nickolas Bramlett, and Wesley Wilson's Training Background

Officer Bramlett and Officer Wilson are patrol officers with the Bartlett Police Department ("BPD"). (Ex. 2, Dec. of Nicholas A. Bramlett, filed at D.E. #130-2, ¶ 3; Ex. 3, Dec. of Wesley J. Wilson, filed at D.E. #130-3, ¶ 3).  Jeffrey Cox was appointed as Chief of the BPD on January 1,

---

[4] Plaintiff additionally refers to his Response as a "cross-motion for summary judgment"; however, this filing does not comply with the requirements for filing motions for summary judgment as set forth in Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1.  Accordingly, it is RECOMMENDED that this filing not be considered as a properly filed motion.

2020, and has been employed with there for thirty-four years. (Ex. 4, Dec. of Jeffrey J. Cox, filed at D.E. #130-4, ¶ 3).

All BPD officers are required to be commissioned as law enforcement officers, which requires them to complete the Tennessee Peace Officers Standards and Training ("POST") in the State of Tennessee and meet POST pre-employment requirements. (Dec. of Cox ¶ 5). All BPD officers are required to complete the training course presented by the Tennessee Law Enforcement Academy or other equivalent training. (Dec. of Cox ¶ 8). Training for BPD officers includes as follows: the laws regarding arrest; training regarding the procedures involved in making arrests; training regarding the use of force; training regarding constitutional law; training regarding probable cause; training regarding the investigation of crimes and criminal activity; training regarding traffic stops; training regarding field sobriety testing; training regarding interviewing witnesses, victims, and suspects; training regarding the psychology of human behavior; training regarding civil liability; and training regarding bias-based profiling. (Dec. of Cox ¶ 11). All BPD officers must undergo and pass a background investigation and psychological and physical tests before being hired. (Dec. of Cox ¶¶ 6-7).

Upon being hired, the officer is assigned to ride with a senior officer for field training as part of an initial probationary period in which the field training officer trains the new officer regarding conducting traffic stops, conducting field sobriety testing, establishing probable cause, making arrests, interviewing witnesses, victims, and suspects, community expectations, and personal conduct. (Dec. of Bramlett, D.E. #130-2, ¶ 6). While being employed by BPD, officers must receive at least forty hours of in-service training annually presented by the City of Bartlett or other nearby cities. (Dec. of Bramlett, D.E. #130-2, ¶ 17). Officer Bramlett and Officer Wilson

satisfied the initial hire training for the BPD, including passing the background investigation and psychological and physical tests, and have completed the in-service training requirements. (Dec. of Cox, #130-4, ¶¶ 13-17; Dec. of Wilson ¶¶ 4-6, 9-11; Dec. of Bramlett ¶¶ 4-6).

### b. Incident in Question

On April 19, 2019, Plaintiff drove home from work and consumed a twelve-ounce can of beer and a ten-ounce glass of wine. (Ex. 1, Dep. of Anthony Grose, filed at D.E. #130-1, at 48:18-20, 49:4-7, 51:8-22, 52: 15-23, 129: 20-24, 131:6-15, 213:13-21). Plaintiff then drove his red GMC Sierra truck to the home of Herman Owens ("Owens") where he remained until shortly after 2:00 a.m. on April 20, 2019. (Dep. of Grose at 47:10-16, 131: 23-24-132: 1).

Upon leaving Owens' house, Officer Bramlett observed Plaintiff drive through the intersection of St. Elmo and Stonehill, turn onto Billy Maher Road, turn onto Memphis Arlington Road, and turn onto Yale Road. (Dep. of Grose at 62:3-63:2; Dec. of Bramlett at ¶ 18-20). Officer Bramlett activated his lights after observing Plaintiff's vehicle swerve from the north curb lane on Yale Road to the south traffic lane and swerve back to the north curb lane. (Dep. of Grose at 137:2-3, 244:8-24, 277:3-24, 302:4-14; Dec. of Bramlett at ¶¶ 21-22). Based on these actions, Grose believes that Officer Bramlett had a reasonable suspicion to pull him over. (Dep. of Grose at 116:7-24, 248:9-17).

When Officer Bramlett approached Plaintiff's vehicle, he smelled the odor of an intoxicant, saw that Plaintiff's eyes were blood shot, and heard Plaintiff's slurred his speech. (Dep. of Grose, at 219:12-17, 247:20-248:6, 301:14-20; Dec. of Bramlett at ¶ 24). Officer Bramlett proceeded to ask Plaintiff if he consumed any alcohol, which Plaintiff denied but then later admitted to having had one beer. (Dep. of Grose at 140:12-24, 249:9-20; Dec. of Bramlett at ¶ 26). As Plaintiff

7

exited his vehicle, he was unsteady and had to use his vehicle to maintain balance. (Dep. of Grose 142:6-10, 144:14-145:1, 249:4-9; Dec. of Bramlett at ¶ 27).

Officer Bramlett asked Plaintiff if he would agree to taking a field sobriety test and then proceeded to ask Officer Wilson if he would administer the field sobriety test because he was on duty and had specialized training as a drug recognition expert. (Dec. of Bramlett at ¶ 28). Officer Wilson then arrived at the scene and began to speak with Plaintiff. (Dec. of Bramlett at ¶ 29; Dec. of Wilson at ¶ 21). After Officer Wilson explained what a field sobriety test was, Plaintiff consented to taking one. (Dep. of Grose at 81:9-15; Dec. of Bramlett at ¶ 31; Dec. of Wilson at ¶ 24). However, Plaintiff struggled to understand Officer Wilson's directions for the field sobriety test. (Dep. of Grose at 147:14-16, 235:8-10, 235:21-24, 236:1-7, 300:8-11; Dec. of Bramlett at ¶ 31; Dec. of Wilson at ¶ 24). Officers Bramlett and Wilson asked Plaintiff if he had any physical conditions, to which Plaintiff responded generally that he had nerve problems and an unspecified vision problem related to driving in the rain. (Dep. of Grose at 82:14-18, 142:11-17; Dec. of Bramlett at ¶ 30; Dec. of Wilson at ¶ 23).

Plaintiff admitted in his deposition that his bloodshot eyes, mumbling, lack of balance, lack of understanding Officer Wilson's instructions for the field sobriety test, and his overall performance during the field sobriety test made it easy for the officers to conclude that he was under the influence of an intoxicant. (Dep. of Grose at 143:7-16, 145:19-21, 148:1-15, 219:12-17, 235:16-24, 236:1-15, 247:20-24, 290:2-16, 300:16-24, 301:1-20). Specifically, Plaintiff was asked during his deposition, "Having watched the video (of his traffic stop) you can understand why they thought you were under the influence? You can understand why they thought you were being resistant?" to which he responded "Right." (Dep. of Grose at 143:11-16, 145:1, 148:1-13,

8

219:12-20, 235:24, 236:1-13, 247:20-23, 290:2-16, 300:16-20, 301:10-20).

Plaintiff was advised that he was under arrest, was handcuffed, and was placed in the back seat of Officer Bramlett's police vehicle. (Dec. of Bramlett at ¶¶ 36-38; Dec. of Wilson, D.E. #130-3, ¶¶ 29-31). Plaintiff was charged with driving under the influence of intoxication, reckless driving, and violating the open container law. (Dec. of Bramlett at ¶ 39; Dec. of Wilson ¶ 32). An open Modelo beer was found in the vehicle when Officer Bramlett was retrieving a briefcase per Plaintiff's request. (Dec. of Bramlett at ¶ 39). Plaintiff was transported to Bartlett Municipal Jail by Officer Bramlett. (Dec. of Bramlett at ¶ 38).

     *c. Post-Incident*

Following Plaintiff's arrest, Officer Bramlett prepared an Affidavit of Complaint, which states as follows:

> On Saturday April 20, 2019 at approximately 0223 hours[,] arresting officer observed a Red GMC Sierra traveling at a high rate of speed westbound St. Elmo at Stonehill Dr. The speed was confirmed using a properly calibrated moving radar to be 47 mph in a 35 mph zone. Arresting officer proceeded to catch up to the vehicle that made a s/b turn onto Billy Maher Rd. Arresting officer observed the vehicle cross over the center line multiple times. The vehicle continued westbound Yale Rd. into the curb lane. Arresting officer observed the vehicle cross over the center line and swerve back into the curb lane. . . . Upon contact with the driver/defendant, . . . arresting officer observed a strong odor of intoxicant, blood shot watery eyes, as well as slurred mumbled speech. Arresting officer asked the defendant to exit the vehicle, at which time, the defendant used the driver door to keep his balance. Arresting officer asked for DRE Officer Wesley Wilson [to] make scene to perform SFSTs. Officers asked the defendant if he had any medical problems to which he only answered, "nerve problems." Officers asked if the defendant had any eye or leg problems to which the defendant stated that he needed his glasses but would not elaborate on any other issues. Officers asked the defendant to perform SFSTs. The defendant could not understand what Officers was asking, but after multiple times explaining the tests, he consented to the tests. The defendant showed all clues on HGN. During the walk and turn[,] the defendant started walking during the instructional phase [and] lost his balance and needed my patrol car for support. The defendant seemed very disoriented, and appeared to not understand officers nor could he respond to our questions. The

9

defendant could not complete SFSTs due to his level of intoxication.

(Dec. of Bramlett at ¶ 39 & Exh. 2C, filed at D.E. #130-2, at PageID 1340).

Officer Bramlett also prepared an Affidavit and Application for Search Warrant to draw blood from Plaintiff to have it analyzed for the presence of any intoxicant or other substance that can impair a person's ability to drive safely.   (Dec. of Bramlett ¶ 41 & Exh. 2E, filed at D.E. #130-2, PageID 1348-1350).   Officer Bramlett obtained the signature of Bartlett Municipal Judge Daniel Brown at 4:32 a.m. on April 20, 2020, for the warrant.   (Dec. of Bramlett at ¶ 41 & Exh. 2F at PageID 1351).   The search warrant was read to Plaintiff, and a copy was given to him.  (Dep. of Grose at 173: 8-11; Dec. of Bramlett at ¶ 42).

Officer Bramlett completed a Request for Blood Withdrawal form and Evidential Blood Draw Request form at 4:54 a.m. on April 20, 2019.   (Dec. of Bramlett at ¶ 43 & Exhs. 2G & 2H, filed at D.E. #130-2 at PageID 1352-1353).   At 5:07 a.m., two vials of blood were drawn from Plaintiff and were sealed by a licensed paramedic of the Bartlett Fire Department at the Bartlett Municipal Jail.   (Dec. of Bramlett at ¶ 44 & Exh. 2I, filed at D.E. #130-2, at PageID 1354-1358).

Plaintiff's vials of blood were stored in a refrigerator in the evidence room at the Bartlett Police Department and were released to the Tennessee Bureau of Investigation on May 6, 2019.  (Dec. of Bramlett at ¶ 45; Dec. of Conyers, filed at D.E. #129-1 at PageID 1214, ¶ 9).   On August 8 and 9, 2019, Plaintiff's blood was analyzed by Special Agent Conyers, a forensic scientist in the Tennessee Bureau of Investigations' Forensic Services Division.   (Dec. of Conyers, D.E. #129-1, ¶¶ 4-5, 11).   The average of the two test results showed that Plaintiff's blood had an ethyl alcohol concentration of 0.18%.   (Dep. of Grose at 73:19-24; Dec. of Conyers at ¶ 12).   The test results for Plaintiff's blood are accurate at a minimum of a 99.73% confidence level.   (Dec. of Conyers

10

at ¶ 13). Special Agent Conyers reported the results of Plaintiff's blood analysis in the Official Alcohol Report, which bears his signature, on August 30, 2019. (Dec. of Conyers at ¶ 14).

On July 21, 2021, a grand jury indicted Plaintiff, charging him with one count of driving a motor vehicle "while the alcohol concentration in his blood was eight-hundredths of one percent (0.08%) or more, in violation of T.C.A. 55-10-401;" one count of driving a motor vehicle "while under the influence of an intoxicant," in violation of T.C.A. 55-10-401; and one count of "unlawfully and recklessly driving a motor vehicle "in willful and wanton disregard for the safety of persons and property, in violation of T.C.A. 55-10-205, against the peace and dignity of the State of Tennessee." Each count stems from the incident that occurred on April 20, 2019. (Dep. of Grose at 282:8-22; State Court Indictment, filed at D.E. #130-5, at PageID 1382-1386).

### III. Proposed Analysis & Conclusions of Law

#### a. *Standard of Review*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d

452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### b. *Section 1983 Claim against the City*

Section 1983 creates a private right of action to vindicate violations of rights, privileges, or immunities secured by the Constitution and the laws of the United States. *Rehberg v. Paulk*, 566 U.S 356, 361 (2012). To prove a claim under Section 1983, the plaintiff must show the deprivation of a constitutional right or federal statutory right was caused by a person acting under

12

color of law. 42 U.S.C. § 1983; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (citation omitted).

To succeed on a claim against a municipality under Section 1983, a Plaintiff must show that his injury was caused by an unconstitutional policy or custom of the municipality. *Bd. of Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403 (1997); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Srvs. of the City of New York*, 436 U.S. 658, 690-91 (1978). To satisfy these requirements, Plaintiff must identify the policy or custom, connect the policy or custom to the municipality itself, and show that the particular injury was incurred because of the execution of that custom or policy. *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), overruled on other grounds by *Harcz v. Boucher*, 763 Fed. App'x 536 (6th Cir. 2019); *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994).

Here, Plaintiff has put forth no evidence of a policy or custom of the City that resulted in any deprivation of his constitutional or statutory rights. Additionally, the City has put forth evidence extensively detailing its training procedures, which Officer Bramlett and Officer Wilson completed. Accordingly, it is RECOMMENDED that Plaintiff's Section 1983 claim against the City fails as a matter of law.

    c. *Section 1983 Official-Capacity Claims against Officer Bramlett and Officer Wilson*

Official capacity suits against individuals acting on behalf of the municipality are treated as suits against the municipality. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citing *Monell*, 436 U.S. at 690, n.55). For that reason, a plaintiff must still establish that the municipality's policy or custom was the moving force behind the alleged deprivation of rights to succeed on an official-capacity claim. *Id*. at 166 (citations omitted). Thus, for the same reasons

13

that it is RECOMMENDED, *supra*, that Plaintiff's Section 1983 claim against the City fails as a matter of law, it is RECOMMENDED that Plaintiff's official-capacity claims against Officer Bramlett and Officer Wilson fail as a matter of law.

### d. *Section 1983 Individual-Capacity Claims against Officer Bramlett and Officer Wilson*

To succeed on an individual-capacity claim under Section 1983, a plaintiff must prove that the government official, "through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). If the plaintiff establishes that the government official violated a constitutionally protected right, the inquiry does not end there, as the government official would nonetheless be shielded by qualified immunity unless his conduct violates "clearly established statutory or constitutional rights of which a reasonable party would have known." *Higgason v. Stephens*, 288 F.3d 868, 876 (citations omitted).

Plaintiff alleges that Officer Bramlett and Officer Wilson violated the Fourth, Eleventh, and Fourteenth Amendments of the United States Constitution in the manner in which they effectuated the stop, arrest, seizure of his property, and blood draw. Plaintiff has not put forth any evidence to dispute that put forth by Officer Bramlett and Officer Wilson. Thus, as there is no genuine dispute of material fact, the Court must determine if, as a matter of law, Officer Bramlett and Officer Wilson violated Plaintiff's constitutional rights.

### i. *Fourth Amendment*

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things

14

to be seized." U.S. Const. amend. IV.

To lawfully effectuate a traffic stop of an individual believed to be driving under the influence, an officer must only have reasonable suspicion. *Gaddis v. Redford Twp.*, 364 F.3d 763, 770 (6th Cir. 2004). Reasonable suspicion requires the Court to consider the totality of the circumstances surrounding the stop. *Id*. at 771 (citations omitted). It is undisputed that Officer Bramlett observed Plaintiff swerve into the opposing lane of traffic and then swerve through his lane of traffic into the curb lane, which supports a finding of reasonable suspicion that plaintiff was under the influence. *See id*. (stating that observing a driver weaving twice and touching the road's dividing line over a fairly short span supports a finding of reasonable suspicion). The Affidavit of Complaint additionally reflects that Officer Bramlett documented Plaintiff speeding and crossing over the center line and swerving into the curb lane "multiple times." Plaintiff further conceded in his deposition that Officer Bramlett had reasonable suspicion to stop his vehicle, and Plaintiff's Response does not provide any authority requiring a different conclusion.

To lawfully effectuate an arrest, an officer must have probable cause of criminal activity. *Beck v. Ohio*, 379 U.S. 89, 90 (6th Cir. 2007); *Illinois v.* Gates, 462 U.S. 213, 235 (1983); *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Probable cause requires that the "facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed [or] is committing . . . an offense." *DeFillippo*, 443 U.S. at 37. When determining whether an officer had probable cause, a court may only look at what was known to the officer at the time of the arrest. *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999) (citing *Carroll v. United States*, 267 U.S. 132, 162 (1925)). The existence of probable cause in a Section 1983

action presents a jury question unless there is only one reasonable determination possible. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citation omitted).

The undisputed facts in the record show that, when initially speaking with Plaintiff, Officer Bramlett smelled the odor of an intoxicant, saw that his eyes were blood shot, and heard him slurring his speech. Plaintiff initially denied consuming any alcohol but later admitted to having consumed a beer. As Plaintiff exited his vehicle, he was unsteady and had to use his vehicle to maintain balance. When Officer Wilson attempted to explain the field sobriety tests, Plaintiff struggled to understand the instructions. The Affidavit of Complaint reflects that he ultimately "showed all clues on HGN," lost his balance attempting to walk, required Officer Wilson's patrol car for support, appeared disoriented, could not understand or respond to his questions, and could not complete the tests.

Although Plaintiff generally advised the officers at the scene that he had some type of nerve problems or needed glasses, the standard for probable cause does not demand that there be absolute certainty that an individual has committed a crime. It requires a probability of criminal activity. *Jolley v. Harvell*, 254 Fed. Appx. 483, 486-87 (6th Cir. 2007) (citing *Gates*, 462 U.S. at 253). The only reasonable determination here is that the officers knew that there was a probability, given the totality of the circumstances, that Plaintiff was in fact driving while under the influence of alcohol in violation of Tennessee Code Annotated Section 55-10-401 and driving recklessly in violation of Tennessee Code Annotated Section 55-10-205.

Following an arrest, officers may lawfully conduct an inventory search of a vehicle. *United States v. Alexander*, 954 F.3d 910, 915 (6th Cir. 2020). Although the purpose of an inventory search is to catalogue the property seized, the fact that an officer discovers contraband

or other evidence of criminal activity does not negate its legality. *Id.* (citing *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998)). The crux of an inventory search is that it be performed in accordance with standard criteria. *Alexander*, 954 F.3d at 915. There is no evidence in the record that suggests that this search was not so performed or that it was unlawful in any other way.

Finally, Plaintiff argues that his blood was drawn unlawfully while he was in custody. However, the undisputed evidence in the record is that Plaintiff's blood was drawn consistent with a warrant. There is no evidence that this warrant was insufficient or invalid, and searches pursuant to lawful warrants do not violate an individual's Fourth Amendment rights.

For the foregoing reasons, it is RECOMMENDED that Officer Bramlett and Officer Wilson did not run afoul of the Fourth Amendment and that Plaintiff's Section 1983 claims against them in their individual capacities fail as a matter of law.

### *ii. Eleventh Amendment*

Plaintiff further alleges that his Eleventh Amendment rights were violated. The Eleventh Amendment protects states from being sued in federal court, but it does not protect individual plaintiffs. *See* U.S. Const. amend. XI. Accordingly, it is RECOMMENDED that Plaintiff's Section 1983 claims against Officer Bramlett and Officer Wilson in their individual capacities based upon alleged violations of the Eleventh Amendment fail as a matter of law.

### *iii. Fourteenth Amendment*

Plaintiff further alleges that his Fourteenth Amendment rights were violated because Officer Bramlett and Officer Wilson did not follow its policies and protocol in their encounter with Plaintiff. However, there is no evidence in the record that supports the conclusion that Officer

Bramlett and/or Officer Wilson violated any policies or protocol in their encounter with Defendant. Accordingly, it is RECOMMENDED that Plaintiff's Section 1983 claims against Officer Bramlett and Officer Wilson in their individual capacities based upon violations of the Fourteenth Amendment fail as a matter of law.

  e. *Plaintiff's Title VI Claim*

Plaintiff's Complaint conclusorily states that Defendants violated Title VI. As Title VI governs unlawful discrimination, Defendants have construed such a claim to be based upon Plaintiff's allegations that his interactions with law enforcement were the result of "illegal profiling" and addressed these vague allegations it insofar as possible in their Motions for Summary Judgment. In Plaintiff's Response, however, he explicitly states that he has "no evidence that the City treats African American motorists differently than Caucasian motorists." (*See* D.E. #144 at PageID 1523). There is also no evidence in the record that either Officer Bramlett or Officer Wilson took any unlawful action based upon Plaintiff's race. Further, Plaintiff has raised no further argument based upon Title VI and has not articulated how any genuine issue of material fact exists such that such a claim should be considered by a trier of fact. Accordingly, it is RECOMMENDED that Plaintiff's purported Title VI claims against the City and against Officer Bramlett and Officer Wilson in their official and individual capacities fail as a matter of law.

  f. *Plaintiff's Remaining Federal Law Claims*

Although not included in any specific count in the Complaint, Plaintiff generally alleges violations of several federal statutes—namely, 18 United States Code Sections 241, 242, and 244 and 34 United States Code Section 12601. With the exception of Section 244, none of these

18

statutes create a private right of action.  *See, e.g., Villard T. Bogard v. Allegan Cty., Mich.*, No. 17-2329, 2018 WL 5819476, at *3 (6th Cir. Sept. 6, 2018) (stating that Sections 241 and 242 do not create private rights of action); *Patriece D. Minner v. Juvenile Ct., Shelby Cty. Gov't*, No. 2:17-cv-2714-JPM-cgc, 2018 WL 2560335, at *4 (W.D. Tenn June 4, 2018) (citations omitted), report and recommendation adopted in part, rejected in part by *Patriece D. Minner v. Juvenile Ct., Shelby Ct. Gov't*, No. 2-17-cv-2714-JPM-cgc, 2018 WL 4762136 (W.D. Tenn. Oct. 2, 2018) (stating that Section 12601 does not create a private right of action).

Section 244 provides as follows: "Whoever, being a proprietor, manager, or employee of a theater or other public place of entertainment or amusement . . . causes any person wearing the uniform of any of the armed forces of the United States to be discriminated against because of that uniform, shall be fined under this title."  Plaintiff has put forth no evidence that would tend to establish any violation under Section 244.  Accordingly, it is RECOMMENDED that these statutory claims fail as a matter of law.

### g.  *Plaintiff's Claims under the Tennessee Constitution*

Finally, Plaintiff alleges that Defendants violated Article I, Section 7 of the Tennessee Constitution.  Tennessee law does not recognize a private cause of action for violations of the Tennessee Constitution.  *See Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996); *Bowden Bldg. Corp. v. Tennessee Real Estate Comm'n*, 15 S.W.3d 434, 446 (Tenn. Ct. App. 1999).  Accordingly, it is RECOMMENDED that Plaintiff's purported claim for violations of the Tennessee Constitution fails as a matter of law.

## IV. Conclusion

For the reasons set forth herein, it is RECOMMENDED that Defendants' Motion for Summary Judgment be GRANTED.

**SIGNED** this 11th day of August, 2023.

s/ Charmiane G. Claxton<br>
CHARMIANE G. CLAXTON<br>
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**