IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ANTHONY T. GROSE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:20-cv-02307-TLP-cgc |
| v. ) | JURY DEMAND |
| ) | |
| CITY OF BARTLETT, TENNESSEE ) | |
| GOVERNMENT, NICK BRAMLETT, in his ) | |
| official and individual capacity, WESLEY ) | |
| WILSON, in his official and individual ) | |
| capacity, ) | |
| ) | |
| Defendants. ) | |

**ORDER ADOPTING REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pro se Plaintiff Anthony Grose sued Defendants City of Bartlett, Tennessee ("the City"), Nick Bramlett, ("Officer Bramlett"), and Wesley Wilson ("Officer Wilson") (jointly, "Defendants") over a traffic stop. (ECF No. 1.) Plaintiff alleges violations of 42 U.S.C. § 1983, 18 U.S.C. §§ 241, 242, and 244, 34 U.S.C. § 12601, and Title VI of the Civil Rights Act of 1964 ("Title VI"). (*Id.*) He also alleges a violation of Article I, Section 7 of the Tennessee Constitution. (*Id.*) The City and the Bartlett Defendants moved for summary judgment on all claims, under Federal Rule of Civil Procedure 56. (ECF Nos. 130–131.)

Under Administrative Order 2013-05, the Court referred this motion to Magistrate Judge Charmiane G. Claxton ("Judge Claxton"). Judge Claxton entered a Report and Recommendation ("R&R") recommending that the Court grant Defendants' motions for summary judgment. (ECF

1

No. 157.) For the reasons below, the Court **ADOPTS** her R&R and **GRANTS** summary judgment for Defendants.

## BACKGROUND

This case arises from a traffic stop in April 2019. (*Id.* at PageID 2254.) Defendants pulled Plaintiff over, conducted a field sobriety test, arrested Plaintiff, inventoried the property in his vehicle, and drew his blood. (*Id.*) Plaintiff alleges that this conduct violated his Fourth, Eleventh, and Fourteenth amendment rights, along with his rights under Title VI, a host of criminal-statutory laws, and the Tennessee Constitution. (*Id.* at PageID 2254–55)

On the April evening in question, Officer Bramlett saw Plaintiff driving at a high rate of speed and watched him swerve into oncoming traffic. (*Id.* at PageID 2259.) Officer Bramlett pulled Plaintiff over. (*Id.*) At the car, he smelled alcohol and noticed Plaintiff's bloodshot eyes and slurred speech. (*Id.*) Plaintiff also needed to steady himself before getting out of his car. (*Id.* at PageID 2259–60.)

Officer Wilson, Bramlett's partner, then performed a field sobriety test. (*Id.* at PageID 2260.) Plaintiff struggled to understand Officer Wilson and to follow his directions. (*Id.*) Plaintiff told Defendants that he had one drink that evening and had trouble driving at night because of nerve and eye conditions. (*Id.*) Because he failed the field sobriety test, Defendants arrested Plaintiff and did an inventory search of his vehicle, finding an open beer. (*Id.* at PageID 2261.) Defendants next obtained a search warrant to draw Plaintiff's blood. (*Id.* at PageID 2262.) He had a blood alcohol content of .18%—enough to charge him with DUI.[1] (*Id.*)

---

[1] A grand jury indicted Plaintiff in July 2021 for two violations of T.C.A. 55-10-204 (driving under the influence of an intoxicant) and one violation of T.C.A. 55-10-205 (reckless driving). (ECF No. 35-2 at PageID 365.)

Plaintiff alleges here that the Bartlett Defendants forcefully handcuffed and pushed him into the police car. (ECF No. 1 at PageID 11.) At the jail, when Plaintiff refused to give a blood sample, Defendants strapped him to a chair and forcibly drew his blood. (*Id.* at PageID 14.) Plaintiff sued Defendants, alleging violations of his civil and constitutional rights. (ECF No. 1.) In February 2023, Defendants moved for summary judgment.[2] (ECF Nos. 130–31.) They rely on Plaintiff's deposition testimony, declarations, and Plaintiff's indictment; they also included a statement of material facts. (*Id.*) Plaintiff opposed summary judgment, but failed to respond to Defendants' statement of facts, under Federal Rule of Civil Procedure 56(c) and Local Rule 56.1(b). (ECF No. 144.) As a result, Judge Claxton considered Defendants' facts as undisputed when she evaluated the motion, and this Court will do the same. (ECF No. 157 at PageID 2257.)

## **THE R&R**

After recounting the factual and procedural history, Judge Claxton analyzed the pleadings as required in Federal Rule of Civil Procedure 56. (*Id.* at PageID 2262–63.) Her analysis begins with Plaintiff's § 1983 claims, first against the City and then the individual Defendants in their official capacities. (Id. at PageID 2264-65.) She then takes up the § 1983 claims against them individually. (*Id.* at PageID 2266.) Because Plaintiff asserts Fourth, Eleventh, and Fourteenth amendment violations, Judge Claxton analyzes each of those claims in turn. (*Id.* at PageID 2266–70.) Next, she analyzes Plaintiff's Title VI claim and his remaining federal-law violations. (*Id.* at PageID 2270–71.) Last, she addresses Plaintiff's state-law claim. (*Id.* at PageID 2271.)

---

[2] Defendants filed two motions for summary judgment on the same day – one seeks judgment on the claims against the City and the Defendants in their official capacities, and the other seeks judgment on the claims against the Defendants in their individual capacities. (ECF Nos 130-31.) Both motions rely on the same statement of material facts, affidavits, and deposition testimony.

Judge Claxton then recommends that the Court grant summary judgment for Defendants on all counts. (*Id.* at PageID 2272.) She explains that Plaintiff never advanced a policy or custom to support a § 1983 claim against the City, nor did he show how any individual Defendant violated one of his Constitutional rights. (*Id.* at PageID 2265–66.) For the Title VI claim, Judge Claxton notes that the allegations are conclusory and lack factual allegations. (*Id.* at PageID 2270.) Defendants assumed that Plaintiff intended to allege that the officers used racial profiling when they stopped him. But Plaintiff dispelled that idea when he responded that he has "no evidence that the City treats African American motorists differently than Caucasian motorists." (*Id.*, citing ECF No. 144 at PageID 1523.)

Judge Claxton found correctly that the record lacks evidence that any Defendant treated Plaintiff differently based on his race. (*Id.* at PageID 2270.) Because Plaintiff asserted no other way Defendants violated Title VI, Judge Claxton recommended dismissing this claim too. For the remaining federal and state-law claims, Judge Claxton found that the statutes he relies on do not provide a private right of action or that Plaintiff failed to allege facts tending to show a violation. (*Id.* at PageID 2270–71.)

## LEGAL STANDARD

Courts grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court has to view the evidence—and justifiable inferences from the facts—in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is then proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325. Once a party moves for summary judgment, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict of the nonmoving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co* 475 U.S. at 586.

Though Courts hold pro se plaintiffs "to less stringent standards than formal pleadings drafted by lawyers," *Williams v. Curtin,* 631 F.3d 380, 383 (2011) (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)), those parties still must follow the Federal Rules of Civil Procedure. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. 2011). Courts "have no obligation to act as counsel or paralegal to pro se litigants." *Thomas v. Romanowski*, 362 F. App'x 452, 456 (6th Cir. 2010) (quoting *Pliler v. Ford*, 542 U.S. 225, 231 (2004)). What is more, courts need not create a pro se litigant's claim for him. *Payne v. Sec. of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (citations omitted).

A magistrate judge may submit to a district court judge proposed findings of fact and a recommended ruling on certain pretrial matters, including whether to dismiss an action for failure to state a claim. 28 U.S.C. § 636(b)(1)(A)–(B). And under Federal Rule of Civil

5

Procedure 72(b)(2), "[w]ithin 14 days of being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). If the parties do not object, then a district court reviews an R&R for clear error. Fed. R. Civ. P. 72(b) advisory committee notes. And the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

After Judge Claxton entered her R&R, Plaintiff filed an objection. (ECF No. 158.) But he only copied the entire R&R with one-sentence "objections" written after each header. (*Id*. at PageID 2278–79, 81, 83.) The last page of the objections recounts some Sixth Circuit decisions without explaining their relevance. (*Id.* at 2289–91.) Nowhere in the objection does Plaintiff address a legal conclusion or factual contention from the R&R. At best, this "objection" disputes "the correctness of the [magistrate judge's] recommendation . . ." *See Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). When that happens, the district court treats a party's objections as a general objection to the entire magistrate judge's report. *McCready v. Kamminga*, 113 F. App'x 47, 49 (6th Cir. 2004). And "[a] general objection is considered the equivalent of failing to object entirely." *Id.* The Court therefore reviews the R&R for clear error.

## **DISPOSITION**

Finding no clear error, the Court adopts Judge Claxton's R&R.

I. **Plaintiff's § 1983 Claims Against the City and the other Defendants in Their Official Capacities Fail**

Plaintiff brings § 1983 claims against the City of Bartlett, Tennessee, and the other Defendants in their official capacities. Section 1983 creates a private right of action for Constitutional violations and violations of the laws of the United States. *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). To violate § 1983, a person acting under color of state law must deprive a

6

party of their constitutional or federal statutory rights. *Id.* But when a § 1983 claim names a municipality, the plaintiff must connect their alleged injury to the municipality's policy or custom. *Monell v. Dep't of Soc. Srvs. Of the City of New York*, 436 U.S. 658, 690–91 (1978). And claims against individuals acting in their official capacity are treated as a lawsuit against the government entity that employs them. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citing *Monell*, 436 U.S. at 690, n. 55).

The claims against the individual Defendants in their official capacities are treated as a claim against the municipality, the City of Bartlett, Tennessee. And Plaintiff has not identified a policy or custom of the City that is allegedly unconstitutional. For example, in his deposition, Plaintiff could not describe how the field sobriety test was unconstitutional (ECF No. 130-1 at PageID 1243–46) and admitted that his driving posed a danger to others. (*Id.* at 1248.) Defendants also responded with evidence of the training procedures and protocols under which Officers Bramlett and Wilson complied (and are uncontested). (ECF No. 130-1-7, ECF No. 131.) Judge Claxton found that Plaintiff's § 1983 claims against the City and the Bartlett Defendants in their official capacities fail. (ECF No. 157 at PageID 2266.) And this Court agrees with her analysis and conclusion.

## II.   Plaintiff's 1983 Claims Against Defendants in Their Individual Capacities Also Fail

Plaintiff also brings Section 1983 claims against Defendants in their individual capacities. Succeeding on an individual capacity claim under this section is a two-step process — first, a plaintiff must prove that the government official, "through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). Then a plaintiff must prove why the official will not be shielded by qualified immunity. *Higgason v. Stephens*, 288 F.3d 868, 876 (2002) (citations omitted).

7

Qualified immunity generally shields government officials performing their duties from civil liability, so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable party would have known." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999). Even if the Court were to find that Defendants violated Plaintiff's constitutional rights, it must then ask whether there is enough evidence to show that the conduct is objectively unreasonable. *Id.* (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1157–58 (6th Cir. 1996).

Plaintiff claims that Defendants violated his Fourth, Eleventh, and Fourteenth Amendment rights during the traffic stop, his arrest, and from the seizure of his property and the blood draw. (ECF No. 1 at PageID 17-19.) Defendants countered by moving for summary judgment with a statement of material facts to which Plaintiff did not respond (and this Court finds undisputed). (ECF Nos 130–31.) Those undisputed facts explain (1) what happened during the traffic stop, (2) their training protocols and procedures, (3) that they got a warrant for Plaintiff's blood draw, and (4) the indictment. (ECF No. 130-6, PageID 1387-1394.) The Court will now analyze each alleged Constitutional violation in turn.

    a. **Fourth Amendment Violation**

The crux of Plaintiff's § 1983 argument is that Defendants violated his Fourth Amendment rights when they; 1) pulled his car over , 2) arrested him, 3) searched his car, and 4) drew his blood. (ECF No. 1 at PageID 18-19.) The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause …" U.S. Const. amend. IV. But the record lacks evidence that Plaintiff suffered an

unconstitutional detainment, arrest, or deprivation of his property.  In other words, the officers did not violate his Fourth Amendment rights.

First, Defendants lawfully stopped his car based on Plaintiff's irregular driving.  The Supreme Court has long-established that police officers may stop an individual if they have "reasonable suspicion" of criminal activity.  *Gaddis v. Redford Twp.*, 364 F.3d 763, 770 (6th Cir. 2004) (citation omitted).  The crime of drunk driving is no exception.  *See United States v. Roberts*, 986 F.2d 1026 (6th Cir. 1993.)  In fact, the Supreme Court listed many factors: driving in the median, crossing the center line, weaving, and swerving as "sound indicia of drunk driving" *Navarette v. California*, 572 U.S. 393, 420 (2014).  Those factors were all present here—Officer Bramlett observed Plaintiff cross the center line and swerve into the curb lane; Plaintiff even admits that he drove erratically that night.  (ECF No. 30-1 at PageID 1247–48.).  Defendants therefore had reasonable suspicion to pull over Plaintiff's car and doing so did not violate Plaintiff's Fourth Amendment rights.

After Plaintiff failed the field sobriety test, Defendants arrested him .  To lawfully arrest someone, an officer must have probable cause of criminal activity.  *Beck v. Ohio*, 379 U.S. 89, 90 (6th Cir. 2007).  While there is no specific test for probable cause, it is a "practical and common-sensical standard" that considers "the totality of the circumstances."  *Smith v. City of Wyoming*, 821 F.3d 697, 715 (6th Cir. 2016), *as amended* (May 18, 2016) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013).  Put another way, probable cause exists where "the facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person … in believing … that the suspect committed, is committing, or is about to commit an offense." *Barrera v. City of Mount Pleasant*, 12 F.4th 617, 620 (6th Cir. 2021) (quoting *Michigan v. Defillippo* 443 U.S. 31, 37 (1979).

The undisputed facts show that Officer Bramlett saw Plaintiff driving erratically. (ECF No. 157 at PageID 2259.) Upon pulling him over, Officer Bramlett smelled alcohol when speaking to Plaintiff, saw that Plaintiff's eyes were bloodshot, and heard him slur his words. (*Id.* at PageID 2259–60.) Plaintiff later admitted that he had consumed alcohol; he also needed to steady himself when he got out of his car, and he could not understand the instructions for the field sobriety test (that he could not complete). (*Id.*)

Plaintiff counters that he told the officers he suffered from a nerve condition and that his poor eyesight made it difficult to drive at night. (*Id.* at 2260.) But the standard for an arrest is only a probability of criminal activity, not certainty. *Jolley v. Harvell*, 254 F. App'x 483, 486 (6th Cir. 2007). Given Plaintiff's state—his poor driving, his bloodshot eyes, the smell of alcohol on his person, and his inability to complete the field sobriety test—a prudent officer could determine that Plaintiff was driving under the influence of intoxicants, no matter what excuse the driver gives. And so Defendants' arrest of Plaintiff was lawful and did not violate Plaintiff's Fourth Amendment rights.

After detaining Plaintiff in the police car, the officers searched his vehicle. (ECF No. 157 at PageID 2261.) This is not unusual step when officers tow a car after an arrest of the driver. *United States v. Alexander*, 954 F.3d 910, 915 (6th Cir. 2020). And while the purpose of an "inventory search" is to catalogue property inside the car, if an officer discovers contraband or other evidence of criminal activity in the process, it does not make the search illegal. *Id.* (citing *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998)). An inventory search is unconstitutional only when "the police act[] in bad faith or for the sole purpose of investigation." *United States v. Snoddy*, 976 F.3d 630, 634 (6th Cir. 2020) (quoting *United States v. Vite-Espinoza*, 342 F.3d 462, 470 (6th Cir. 2003)). A police officer cannot inventory a vehicle

10

because he wishes to search it and he must act according to "standard police procedures." *Id.* (citations omitted).

Remember, Plaintiff asked Officer Bramlett to enter his car to grab his briefcase. And now he complains that the officer found an open container of beer. (ECF No. 130-3 at PageID 1366.) Officer Bramlett did not act in any apparent bad faith; rather, he complied with Plaintiff's request. Nothing in the record suggests that Defendants strayed from customary police protocol while searching the car and retrieving the open beer, nor does Plaintiff allege any specific policy or procedure that Defendants violated. (*See* ECF No. 1 at PageID 17-19, ECF Nos. 130-131.) This Court holds that Defendants' search and inventory of Plaintiff's vehicle did not violate his Fourth Amendment rights.

Last, Plaintiff alleges that Defendants forced him to give a blood sample. (ECF No. 1 at PageID 14.) But Officer Bramlett applied for a search warrant to draw Plaintiff's blood. (ECF No. 157 at PageID 2261.) He then took it to a municipal judge who signed the warrant. (*Id.* at PageID 2261–62.) That warrant authorized the officers to take a sample of Plaintiff's blood for testing. (*Id.* at PageID 2262.) The officers read the search warrant to Plaintiff and gave him a copy of it. (*Id.*) No evidence shows that the warrant is insufficient, invalid, or that the officers got it in an unlawful manner. This Court concludes that Defendants did not violate Plaintiff's Fourth Amendment rights when they drew blood from him.

**b. Eleventh Amendment Violation**

Plaintiff alleges that Defendants violated his Eleventh Amendment Rights. (ECF No. 1 at PageID 17.) But the Eleventh Amendment does not protect individual rights; it protects states from being sued in federal courts. *See* U.S. Const. amend. XI. The Court agrees with Judge

Claxton's analysis and conclusion that any claims against Defendants under the Eleventh Amendment fail as a matter of law.

### c. Fourteenth Amendment Violation

Last, Plaintiff alleged that Defendants violated his Fourteenth Amendment rights because they did not "follow its policies and protocol with its encounter with Plaintiff." (ECF No. 1 at PageID 18.) But Plaintiff does not specify the policies that Defendants allegedly violated. (*Id.*) Nor is there are any evidence in the record that Defendants acted contrary to any policies or procedures during their encounter with Plaintiff. For those reasons, this Court agrees with Judge Claxton's recommendation to grant summary judgment for the Fourteenth Amendment claims. (*See* ECF No. 157 at PageID 2270.) There is no disputed material fact and Defendants are entitled to judgment as a matter of law.

Given the evidence, this Court agrees with Judge Claxton's finding that Defendants did not violate Plaintiff's constitutional rights. But even if they did, Defendants would likely be shielded under qualified immunity. *See Bell v. City of Southfield, Michigan,* 37 F.4th 362, 367–68 (6th Cir. 2022) (discussing the qualified immunity standard for § 1983 claims involving police officers). For the reasons above, this Court adopts Judge Claxton's recommendation to grant summary judgment for Defendants as to the § 1983 claims.

### III. Plaintiff's Title VI Claim Fails

Plaintiff also claims that Defendants violated 42 U.S.C. § 2000d, Title VI, prohibiting unlawful discrimination. (ECF No. 1 at PageID 3.) Having reviewed the record and Defendants' motions for summary judgment, the record lacks evidence that the City or the individual Defendants treated Plaintiff differently based on his race. Plaintiff claims that Defendants "profiled him," but in his deposition, he does not elaborate. (ECF No. 130-1 at PageID 1236.)

Rather, he said that there is no way that the officer could have known his race before stopping his vehicle. (*Id.*) Plaintiff also concedes that a police officer has a duty to protect the public from danger, including a motorist who is swerving. (*Id.* at PageID 1230.) And Plaintiff admitted that he has no evidence of racial discrimination—in fact, he testified that Officer Bramlett was courteous during the stop and that Officer Wilson did not treat him differently than a Caucasian suspect. (ECF No. 130-1 at PageID 1240, 1280.) Given the entire record, the Court agrees with Judge Claxton's determination that Defendant's motion for summary judgment is well-founded and should be granted. The Court therefore will grant summary judgment for Defendants as to Plaintiff's Title VI claims.

## IV.     Plaintiff's Remaining Federal Law Claims Fail Either as a Matter of Law or Because the Statutes do not Confer a Private Right of Action

Plaintiff generally alleged violations of 18 U.S.C. §§§ 241, 242, and 244 and 34 U.S.C § 12601. (*See* ECF No. 1.) Except for § 244, these statutes do not confer a private right of action. *See e.g., Villard T. Bogard v. Allegan Cty., Mich.*, No. 17-2329, 2018 WL 5819476, at *3 (6th Cir. Sept. 6, 2018) (stating that Sections 241 and 242 do not create private rights of action); *Trotter v. Metro. Nashville Airport Auth. Hum. Res.,* No. 3:20-00193, 2020 WL 7086146, at *2 (M.D. Tenn. Nov. 12, 2020), *report and recommendation adopted,* No. 3:20-CV-00193, 2020 WL 7074709 (M.D. Tenn. Dec. 3, 2020) (stating that Section 12601 does not create a private right of action). As for § 244, this statute prohibits an employee or owner of a theater or "other public place of entertainment or amusement" from discriminating against a person who wears their United States' armed forces uniform. 18 U.S.C.A. § 244 (West).

Judge Claxton rightfully finds that Plaintiff has alleged no facts supporting a violation of § 244. That is why the Court finds that it should grant Defendants' motion for summary judgment on these claims.

V. **Plaintiff Has No Private Right of Action for Alleged Violations of the Tennessee Constitution**

As Judge Claxton emphasized, Tennessee law does not recognize a private right of action for violating the Tennessee Constitution. *See Cline v. Rodgers*, 87 F.3d 176, 179 (6th Cir. 1996); *see also Bowden Bldg. Corp. v. Tennessee Real Est. Comm'n*, 15 S.W.3d 434, 446 (Tenn. Ct. App. 1999) ('Tennessee, [ ] has not recognized any such implied cause of action for damages based on violations of the Tennessee Constitution") (citations omitted). Because Plaintiff is a private litigant, he cannot bring a claim under Article I, Section 7 of the Tennessee Constitution; the proper redress for such claims is under § 1983. *See Henning v. Madison Cnty., TN*. No. 20-5230, 2020 WL 8678009, at *2 (6th Cir. Sept. 3, 2020). This Court will grant summary judgment for Defendants on all state-law claims.

## CONCLUSION

The Court has reviewed Judge Claxton's R&R for clear error and finds none. The Court **ADOPTS** the R&R and **GRANTS** each Defendant's motion for summary judgment. All claims are therefore **DISMISSED WITH PREJUDICE**.

**SO ORDERED**, this 27th day of September, 2023.

                                                   s/Thomas L. Parker
                                                   THOMAS L. PARKER
                                                   UNITED STATES DISTRICT JUDGE